**KILPATRICK TOWNSEND & STOCKTON LLP**

Frederick L. Whitmer (FW 8888)
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

Rob Roy Smith (pro hac vice)
Bree Black Horse (pro hac vice)
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
Facsimile: (206) 623-6793
rrsmith@kilpatricktownsend.com
brblackhorse@kilpatricktownsend.com

Mark H. Reeves (pro hac vice)
Enterprise Mill
1450 Greene St., Suite 230
Augusta, GA 30901
Telephone: (706) 823-4206
Facsimile: (706) 828-4488
mreeves@kilpatricktownsend.com

*Attorneys for Defendant
GreatPlains Finance, LLC
d/b/a Cash Advance Now*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHONNA M. RANSOM,<br><br>Plaintiff,<br><br>v.<br><br>GREATPLAINS FINANCE, LLC d/b/a CASH ADVANCE NOW<br><br>Defendant. | Civil Action No. 2:22-cv-01344 (WJM)<br><br>**DECLARATION OF EVAN AZURE IN SUPPORT OF DEFENDANT GREATPLAINS FINANCE, LLC d/b/a CASH ADVANCE NOW'S MOTION TO DISMISS** |

I, EVAN AZURE, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I currently serve as the Chief Executive Officer (CEO) of the Fort Belknap Planning and Development Corporation, d/b/a Island Mountain Development Group (IMDG). IMDG is the Tribally-owned and chartered enterprise of the Fort Belknap Indian Community (FBIC or the Tribe) that is the

1

sole manager of GreatPlains Finance, LLC d/b/a Cash Advance Now (GPF). I am an enrolled member of the Assiniboine Tribe, one of the Tribes comprising the FBIC. I am over 18 years of age, and I am familiar with the facts set forth in this declaration and could testify about them under oath.

2. The IMDG Board of Directors appointed me to serve as CEO of IMDG on April 6, 2023.

3. As CEO of IMDG, I am responsible for providing strategic leadership establishing long-range goals, plans and policies for IMDG, and working in close partnership with the IMDG Board to ensure the long-term success of IMDG's business operations. I have management authority over IMDG and am empowered to hire and fire IMDG employees.

4. To fulfill its purpose of creating economic opportunity for the Tribe and its members and generating revenues to fund tribal governmental services, IMDG manages a number of tribally-owned businesses. These include businesses involved in the acquisition and leasing of off-reservation commercial real estate, residential construction, public and private consulting and contracting services, on-reservation retail stores, and online consumer lending. IMDG has also established the Montana Native Growth Fund, a community development financial institution situation on the Fort Belknap Reservation that promotes sustainable tribal home ownership through financial education and credit access, and it has partnered with

the Fort Belknap Tribal Housing Authority to build and remediate homes for tribal members on the Reservation. It also oversees and manages three additional non-profit entities that provide services to tribal members, including a college scholarship program and a high school internship program.

5. Consistent with its purpose of funding the tribal government, IMDG directly distributes 20% of its net income directly to the Tribe.

6. The remaining 80% of IMDG's net income is either directly reinvested in tribally owned businesses to grow their capacity or spent on projects to benefit tribal members. In recent years, such projects have included the development and management of a wellness center for tribal members and a $2.575 million tribal member housing development. Also, earlier this year IMDG made its first direct distribution to tribal members, providing much-needed cash assistance of $400 to each adult enrolled member of the FBIC.

7. Online consumer lending generates approximately 90% of IMDG's revenue. Without that revenue, the revenue that IMDG distributes to the Tribe would decline drastically, as would IMDG's ability to fund other projects to benefit tribal members.

8. IMDG is also a major tribal employer. Of IMDG's approximately 394 employees, approximately 243 are enrolled tribal members, including me, its CEO. Approximately 89 additional IMDG employees are enrolled members of other

tribes, and several more IMDG employees are descendants or spouses of enrolled members of the FBIC. GPF and other tribal businesses lease their employees from IMDG, so these numbers would apply to them as well.

9. The Tribe, working through IMDG, began online consumer lending in 2011 to generate additional economic development opportunities, fund tribal governmental services, and benefit tribal members. Because the Tribe initially lacked experience in this line of business, it relied on third parties to help it build capacity and develop a better understanding of the business and governing regulatory framework. The goal was for the Tribe to learn the business by working with these more experienced third parties, to find what practices and approaches worked best for the Tribe, and then for the Tribe to take over full management responsibilities for its lending businesses.

10. The Tribe established GPF in 2012 as a tribally owned and operated LLC under tribal law. The Tribe, through GVA Holdings, is and has always been the sole member/owner of GPF. Copies of GPF's Articles of Organization and Articles of Operation are attached as Exhibits A and B to this declaration, and the FBIC Council's authorizing resolution for GPF is attached as Exhibit C. As with all of the Tribe's tribally owned and chartered businesses, the goal for GPF was to generate additional revenues and economic opportunities for the tribal government and members.

11. GPF is a manager-managed LLC. Because the Tribe lacked experience in the online consumer lending business when it first created GPF, it initially contracted with a third party, Dater Management Company (Dater), to manage GPF. Dater, in turn, contracted with a third-party loan servicing company (Cash Advance Servicing) to service GPF's loan portfolio.

12. While this arrangement was in place, GPF received a flat fee for each loan origination or payment received from a customer. GPF retained the majority of that fee and paid a portion of it to Dater.

13. Even while Dater served as GPF's manager, the Tribe retained and exercised full authority set all parameters for lending activity pursuant to tribal law. These parameters included, but were not limited to, the amounts that could be borrowed, interest rates charged, and parameters for loan approval. Additionally, IMDG employees and tribal leaders worked directly with Dater and Cash Advance Servicing to ensure that the Tribe gained necessary expertise to operate its lending business independently.

14. By around 2017, the Tribe had learned the lending business well enough to do it on its own. So, at the end of 2017 it terminated the contracts with Dater and Cash Advance Servicing and assumed full responsibility for managing and servicing GPF.

15. Since 2017, GPF has been managed exclusively by the Tribe through IMDG. IMDG fully oversees GPF's day-to-day management, the IMDG Board (all of whom are FBIC Council members) serves as the board of GPF, and all of GPF's employees (many of whom are tribal members) are leased directly from IMDG. IMDG makes all management decisions for GPF, including but not limited to deciding what language goes into loan documents, the interest rates charged (subject to limitations in tribal law), the parameters for loan approval, and what amounts GPF can lend to its customers.

16. Since 2017, all of GPF's cash profitability has gone to IMDG. No other third party receives any profit share or transaction-based compensation from GPF.

17. GPF is licensed by the FBIC Tribal Regulatory Authority and operates pursuant to the FBIC Tribal Online Lending Code. Additionally, any vendor that does more than $50,000 of business with GPF in a year must also obtain a license from the Tribal Regulatory Authority.

18. GVA Holdings is another limited liability company established by the Tribe pursuant to tribal law. Copies of GVA Holdings' Articles of Organization and Articles of Operation are attached as Exhibits D and E to this declaration. GVA Holdings is a manager-managed LLC wholly owned by the Tribe and managed by IMDG. IMDG makes all management and financial decisions for

GVA Holdings, all GVA Holdings services are provided through employees that it leases from IMDG, and any GVA Holdings profit would be transferred to IMDG. In establishing GVA Holdings as a tribal instrumentality under tribal law, the Tribe expressly stated its intent for GVA Holdings to share in the Tribe's sovereign immunity.

19. In January 2023, in an exercise of its oversight authority over IMDG as a tribal enterprise, the FBIC Council (the Tribe's governing body) removed the IMDG Board for failure to follow IMDG's bylaws and appointed elected Council members to serve as IMDG's new Board. These elected members of the FBIC Council continue to serve as IMDG's Board, and thus as GPF's Board, as of the date of this declaration.

20. When the Council removed the old IMDG Board, a third party with which GPF holds a credit facility sent a letter indicating that it viewed the change in Board membership as an event of default. IMDG has contested the validity of the alleged default and has continued its normal business operations uninterrupted under the new Board's and my leadership. GPF's operations and management have not been affected.

21. Rashonna Ransom, the Plaintiff in this lawsuit, obtained two loans from GPF. Copies of the loan agreements that Ms. Ransom signed are attached as Exhibits F and G to this declaration.

22. Each time that Ms. Ransom took out a loan from GPF, she signed a standard loan agreement that clearly stated the amount being borrowed, the annual percentage rate that she would pay on the loan, and the total amount of payments she would make to pay the loan off on schedule. The loan agreements also explained that GPF, the lender, is "an economic arm, instrumentality, and limited liability company of the Tribe" and is "entitled to sovereign immunity." Exhibits F and G at 4. Each loan agreement also explained that Ms. Ransom's contract with GPF was governed exclusively by FBIC Tribal law, that GPF and the Tribe are entitled to sovereign immunity, and that Ms. Ransom's only recourse against GPF would be through the Tribal Dispute Resolution Procedure outlined in the loan agreement. Ms. Ransom never submitted any complaints pursuant to that procedure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 9 day of August, 2023, at Billings, Montana.

Evan Azure, Chief Executive Officer
Island Mountain Development Group

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2023 a true and correct copy of the foregoing was served upon the counsel of record by filing it electronically with the Court's CM/ECF system.

By: /s/ *Frederick L. Whitmer*
Frederick L. Whitmer