UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHONNA RANSOM, on behalf of herself and all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**GREATPLAINS FINANCE, LLC d/b/a CASH ADVANCE NOW, and JOHN DOES 1-10,**<br><br>**Defendants.** | Civ. No. 2:22-cv-01344 (WJM)<br><br>OPINION |

    In this putative class action against Defendant GreatPlains Finance, LLC d/b/a Cash Advance Now ("GPF" or "Defendant") for engaging in usurious payday loans, Defendant moves for reconsideration of the Court's January 22, 2024 Opinion and Order ("Jan. 22 Op."), ECF Nos. 72, 73, pursuant to Local Rule 7.1(i). ECF No. 75. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons below, Defendant's motion for reconsideration is **denied**.

**I.     BACKGROUND**

    Plaintiff Rashonna Ransom ("Plaintiff") obtained two separate high interest loans from online lender GPF - one on October 26, 2015 for $300 at an Annual Percentage Rate ("APR") of 652.36% and another on April 18, 2016 for $450 at an APR of 542.39%. *See* Compl. ¶¶ 22-35, ECF No. 1-2. The Court assumes familiarity with the facts of this case regarding GPF's formation and ownership, which are set forth in more detail in the Court's January 22 Opinion. In brief, GPF is owned by the Fort Belknap Indian Community ("Tribe" or "FBIC") and was initially managed by Dater Portfolio Management LLC ("Dater"), a non-tribal entity, from its inception in 2012 until 2017. Since about 2017, GPF has been exclusively managed by the Fort Belknap Planning and Development Corporation, d/b/a Island Mountain Development Group ("IMDG"), the economic development arm of the Tribe. *See* Jan. 22 Op. at 2. On November 23, 2021, GPF executed a Loan and Security Agreement ("Loan Agreement") to borrow $10 million from various non-tribal lenders acting under the administrative agent Newport Funding, LLC ("NF"). Under that Loan Agreement, the Tribe is prohibited from taking certain actions without triggering an Event of Default. When an Event of Default occurs, the administrative agent is authorized to assume immediate control over certain of GPF's financial accounts and to

1

maintain aspects of managerial control over GPF while the Event of Default remains in effect.

In its January 22 Opinion, the Court denied Defendant's motion to dismiss the case for lack of subject matter jurisdiction finding that GPF was not entitled to sovereign immunity as an arm of the Tribe. To decide that question, the Court examined five of the factors used in *Breakthrough Management Group, Inc. v. Chuckchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010), and concluded that two of the factors favored a finding of immunity, but that three of the factors weighed against arm of the tribe immunity including the factor at issue in this reconsideration motion – the structure, ownership, and management of the entity, which includes the amount of control the Tribe has over GPF. The Court found that this factor weighed against arm of the tribe immunity because pursuant to the Loan Agreement, the administrative agent, NF, had declared an Event of Default on January 20, 2023 and had asserted "immediate control" over aspects of GPF's financial accounts until NF determined the Event of Default cured. Jan. 22 Op. at 7; Default Notice at GPF00840, ECF No. 62-15.

Defendant now asks the Court to reconsider its ruling because it alleges new, previously unavailable evidence: on January 29, 2024, after the Court's January 22 decision, NF executed a Waiver Agreement as to Events of Default that occurred on or about January 20, 2023 ("Specified Events of Default"). *See* Waiver Agreement, ECF No. 76-1. Defendant insists that the Waiver Agreement restores full tribal management of GPF and thus entitles it to arm of the tribe sovereign immunity.[1] The Court disagrees.

## II. DISCUSSION

### A. Motion for Reconsideration Standard

Under Local Civil Rule 7.1(i), a motion for reconsideration may be granted only if (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Mere disagreement with a court's decision, or attempts "to relitigate old matters, raise new arguments, or present evidence or allegations that could have been raised prior to entry of the original order," are not appropriate bases on which to bring a motion for reconsideration. *Martinez v. Robinson*, No. 18-1493, 2019 WL 4918115, at *1 (D.N.J. Oct. 4, 2019); *P. Schoenfeld Asset Management LLC v. Cendant Corp.*, 161 F. Supp.2d 349, 352 (D.N.J.2001). "A motion for reconsideration is 'an extremely limited procedural vehicle' which is to be granted 'sparingly.'" *Brady v. Twp. of Woodbridge*, No. 19-17868,

---

[1] Defendant bears the burden to proof by a preponderance of the evidence that it is an arm of the tribe entitled to sovereign immunity. *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019). "Unlike the tribe itself, an entity should not be given a presumption of immunity until it has demonstrated that it is in fact an extension of the tribe." *Id.*

2

2022 WL 111060, at *1 (D.N.J. Jan. 12, 2022) (quoting *A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*, 106 F. Supp.2d 627, 662 (D.N.J. 2000)).

### B. Waiver Agreement

At the outset, the Loan Agreement requires that "[n]o amendment, waiver or consent shall ... affect the rights or duties of the Administrative Agent under this Agreement or any other Facility Document" unless it is "in writing and signed by the Administrative Agent." Loan Agmt. § 10.3(b), ECF 62-11. Curiously though, the name and signature of the Administrative Agent on the Waiver Agreement are redacted. The Court therefore cannot determine whether the Waiver Agreement was even properly executed.

In any event, the Court rejects a finding that would rest the Court's power to hear a case on NF's decision to waive or later reinstate the Specified Event of Default. The Court's subject matter jurisdiction cannot be subject to change based on GPF's default status. Indeed, despite Defendant's repeated reference to the Waiver as "irrevocable," Defendant does not identify what provision in the Waiver Agreement precludes NF from reinstating the Event of Default. In contrast, elsewhere in the Loan Agreement, where terms are irrevocable, it is expressly so stated. *See e.g., id.* at § 9.6 ("irrevocably" appointing Administrative Agent as attorney-in-fact for specified limited purpose in Event of Default). Indeed, in an Event of Default, the Loan Agreement provides that the Administrative Agent's Power of Attorney is "irrevocably made, constituted and appointed." *Id.* at § 2.11.

Even if the Waiver Agreement is valid and irrevocable, NF has not waived any future defaults. *See id.* at § 10.1 ("No waiver by any party to any Facility Document of any one or more defaults by any other party in the performance of any of the provisions of any Facility Document shall operate or be construed as a waiver of any future default, whether of a like or different nature, and each such waiver shall be limited solely to the express terms and provisions of such waiver."); Waiver Agreement § 3(b) ("The execution, delivery and effectiveness of this Waiver shall not, except in respect of the Specified Events of Default, operate as a waiver of any right, power, or remedy of the Administrative Agent under the Loan Agreements or any related document, instrument or agreement."). In short, setting aside the Specified Event of Default, NF still retains its ability to exercise immediate control in the "Event of a Default" over GPF's financial accounts.

### C. Other Factors Relating to Structure, Ownership, Management, Control

At the time of the January 22 decision, because NF had asserted "immediate control" over GPF's financial accounts upon declaring an Event of Default on January 20, 2023, it was unnecessary for the Court to examine additional facts relevant to the determination of the structure, ownership, management, and control over GPF. However, since the Event of Default has been waived and Defendant has requested an update to the Court's analysis and the factual record for purposes of a potential appeal, the Court will

3

address other arguments raised by Defendant in its motion to dismiss relating to "the leadership structure of the entity claiming immunity, including the entity's governing structure, the extent to which it is owned by the tribe, and the entity's day-to-day management." *Solomon v. Am. Web Loan*, 375 F. Supp.3d 638, 655 (E.D. Va. 2019); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 182 (4th Cir. 2019).

As Defendant states, it is wholly owned by the Tribe and managed by the Tribe through IMDG. The IMDG Board consists entirely of members of the FBIC Council - the Tribe's governing body. Decl. of Evan Azure ("Azure Decl."), ¶ 15, ECF No. 52. However, IMDG's Corporate Charter does not mandate that IMDG's Board must be comprised of only Tribe members, *see* Corporate Charter ¶ 6, ECF No. 53-2, nor is the Court aware of any document that requires GPF to be managed by a tribal entity.[2] Moreover, although the Council has the authority to fill any vacancies or to remove any member of the Board, as evidenced by the January 20, 2023 Notice of Default, the authority to remove any Board member is not unfettered. GPF is not permitted to make "change of control or management," including replacing the "Key Man," without approval from the Administrative Agent. Loan Agmt. § 8.1(m), Art I. at GPF00370. The Loan Agreement includes numerous other provisos defining "Adverse Tribal Actions," the occurrence of which constitute Events of Default, including for instance, directly or indirectly: increasing or imposing any taxes, levy, charge or other payment obligation; restricting or eliminating the right of any borrower to conduct its business in a manner that would be materially adverse to the lenders; conveying or encumbering any interest in the property used in the borrower's business; conducting any commercial lending activities other than through a tribal entity approved by the Administrative Agent. *Id.* at Art. 1, GPF00362-365, § 8.1(q); *see* Jan. 22 Op. at 3. Any development that has "Material Adverse Effect" as determined by the Administrative Agent or lenders, also can trigger an Event of Default. Loan Agmt. § 8.1(p). While Defendant maintains that IMDG makes all management decisions for GPF including language of loan documents, interest rates charged, parameters for loan approval, and amounts that can be borrowed, IMDG's governance is clearly subject to restrictions in the Loan Agreement and effectively limit the Tribe's autonomy over management of GPF. *See e.g., Solomon*, 375 F. Supp.3d at 656 (finding tribal autonomy undermined by promissory note's requirements including provisions that deemed entity in default in the event of any "Adverse Tribal Government Action" or "Adverse Change of Tribal Law."); *Hunter*, 2018 WL 4171612, at *4 ("When a tribe owns an entity, but delegates most of the control of the entity to non-tribal members, that fact weighs against a finding of sovereign immunity.").

Next, to support its claim of tribal immunity, GPF states that the Tribe treats IMDG and GPF as a component unit of the Tribe for accounting purposes and that "many" of the employees it leases from IMDG are tribal members. *See* Decl. of Evan Azure ¶ 15, ECF 52. IMDG has roughly 394 employees, of which 243 are enrolled Tribe members and 89

---

[2] In fact, the Articles of Operation provide for GPF to be managed by Dater, a non-tribal entity. *See* GPF Art. of Operation ¶ 1.7, ECF 52-2; *see also* Jan. 22 Op. at 2.

of the remaining 151 are members of other tribes. *See* Jan. 22 Op. at 2. Defendant does not indicate how many employees it leases, how many among those are Tribe members, or that it must lease only Tribe employees.

In considering the balance of these factors, the structure, management, and control of GPF do not weigh in favor of finding that Defendant is entitled to tribal sovereign immunity. Defendant has not met its burden of proof or shown new previously unavailable evidence that requires reconsideration and reversal of that decision.[3]

### III.   CONCLUSION

For the reasons noted above, GPF is not an arm of the tribe entitled to sovereign immunity. Defendant's motion for reconsideration pursuant to Local Rule 7.1(i) is **denied.**

WILLIAM J. MARTINI, U.S.D.J.

Date: April 18, 2024

---

[3] Analysis of the other *Breakthrough* factors are not reexamined here and remain unchanged from the Court's previous ruling.